ORIGINAL

FILED
MAR 2 3 2007
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**GRUNLEY-WALSH, LLC**
**(f/k/a Grunley-Walsh Construction JV)** *

**Plaintiff,** *

**v.** * **Case No. :** 07-197 C
**Judge:**

**THE UNITED STATES OF AMERICA** * **(Differing Site Conditions Claim)**

**Defendant.** *

* * * * * * * * * * * * *

**COMPLAINT**

Plaintiff, Grunley-Walsh, LLC, formerly known as Grunley-Walsh Construction JV, ("Grunley-Walsh"), by its counsel, Roger C. Jones, Esq., of Huddles Jones Sorteberg & Dachille, P.C., sues the United States of America ("United States"), and for its Complaint in the above matter, respectfully states as follows:

**Jurisdiction**

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1491. Plaintiff brings this action pursuant to the Contract Disputes Act of 1978, as amended, 41 U.S.C. § 601 *et seq.* In addition, this action is related to Case Nos. 1:06-cv-00721-CFL, 1:06-cv-00723-CFL, 1:04-cv-00815-CFL, 1:06-cv-00816-CFL, 1:06-cv-00837-CFL and 1:07-cv-00085-CFL, as it arises out of the same contract and, therefore, should be consolidated with the aforesaid cases.

**The Parties**

2. Plaintiff, Grunley-Walsh, is a general contractor in the construction industry organized and existing under the laws of the State of Maryland, with its principal place of business located at 5010 Nicholson Lane, Suite 200, Rockville, Maryland 20852.

3. Defendant is the United States of America.

## The Contract

4. On May 6, 1998, the United States, acting by and through the Department of the Interior – National Park Service, awarded Grunley-Walsh an Indefinite Quantity Contract (Contract No. 1443CX305998901) (the "Contract") to stabilize and preserve the Washington Monument (the "Project"). The Contract is incorporated by reference herein, but is not attached due to its voluminous nature. Defendant has a copy of the Contract in its possession.

5. Pursuant to Contract Modification No. 0007 ("Contract MOD 7"), dated November 15, 2001, the General Provisions to the Contract were deleted and replaced with revised contract clauses which included certain FAR provisions incorporated by reference. A copy of MOD 7 is attached hereto as **EXHIBIT A**. Three of these provisions included the Changes clause (FAR 52.243-04 August 1987), the Disputes clause (FAR 52.233-01 December 1998) and the Differing Site Conditions clause (FAR 52.236-02 April 1986).

6. In accordance with the Contract, on December 5, 2003 Grunley-Walsh was issued Task Order No. T3059989135 ("Task Order No. 35") in the amount of $13,993,216. Pursuant to Task Order No. 35, Grunley-Walsh was to construct and install an above ground security barrier system at the Washington Monument. More specifically, Grunley-Walsh was to accomplish work the contained in the Project Requirements (Task Order No. 35, Attachment 1) and specifications and drawings prepared under previous Task Order by the Olin Partnership. A copy of Task Order No. 35, including its Attachment 1 Project Requirements is attached hereto as **EXHIBIT B**.

**The Certified Claim for Storm Drainage Revisions Costs**

7. This action relates to a January 19, 2007 certified claim, in the amount of **$21,379** submitted by Grunley-Walsh to the Contracting Officer (the "Certified Claim") pursuant to the Changes clause, the Disputes clause and the Differing Site Conditions clause in the Contract. A copy of the Certified Claim is attached as **EXHIBIT C**.

8. By letter dated March 22, 2007 (attached as **EXHIBIT D**), the Contracting Officer denied Grunley-Walsh's claim.

9. As provided by the Contract Disputes Act, Grunley-Walsh may appeal this decision.

**Factual Background for the Certified Claim**

10. The background drawings provided by the Park Service provided no information concerning the existing subsurface conditions at the Project. Although a June 10, 2002 subsurface investigation report was prepared pursuant to another Task Order (Task Order No. 22) (for use in designing the new security wall and proposed Visitor Facility), this report did not provide any information concerning the unforeseen conditions which are the subject of this claim. Given these facts, and because the Contract contained a standard Government Differing Site Conditions clause, Grunley-Walsh reasonably believed they would be provided an equitable adjustment for unknown differing site conditions, when and if they were encountered.

11. On this Project, there have been numerous instances where differing site conditions were encountered and contract modifications were issued for the additional costs involved. For example: in Modification No. 7 (Item k) Grunley-Walsh was compensated $80,785 due to unforeseen differing site utility conditions; in Modification No. 8 (Item A.11) Grunley-Walsh was compensated for unforeseen differing site utility conditions; and in

Modification No. 9 (Item F) compensation was recognized for removal of an unforeseen subsurface Verizon vault "not shown on the background drawings."

12. The issues in this claim are all similar in nature to the issues involved in those other situations in which a modification was issued (i.e., stemming from unforeseen differing conditions, which were not depicted nor indicated in the background drawings and/or in the contract drawings). Further, each of the issues involves an item of additional work required by the Park Service and for which Grunley-Walsh's subcontractor, Cherry Hill Construction, was required to perform additional work to resolve the differing conditions.

13. The following is a description of the various change order proposals that are incorporated into this claim.

**RCO 950.62 – Bridging Footer Over Abandoned Steam Tunnel at Southwest Ramp**

14. The background drawings indicated an underground abandoned heat and power tunnel running from existing vaults adjacent to the Washington Monument to the outside of the existing Survey Lodge Building. Research done by Grunley-Walsh has revealed this tunnel, which was built in 1884, served the steam elevator engine system for the Monument. In 1923, however, the tunnel was de-activated when the Washington Monument was rewired to receive electricity from a local power company.




15. The existing condition of the power tunnel, since de-activation, was unknown to all parties. During design development, the Park Service made no indication the tunnel needed to be preserved or protected when construction started. Further, the scope of work set forth in Task Order No. 35 required no work in connection with this abandoned power tunnel. It was simply an existing feature on the contract drawings, about which no other information was provided (e.g. whether the tunnel was collapsed, where the tunnel was terminated, how the tunnel was terminated, the size of the tunnel and any necessary precautions that might arise because of the tunnel).

16. The new design for the project, contemplated security walls crossing over the abandoned tunnel in a total of two locations. Further, the design depicted the depth of the footings for these walls, but the design did not indicate the depth of the abandoned tunnel. As it

turned out, the roof of the subsurface abandoned tunnel conflicted with the depth of the underground security wall footings in two locations at the Southwest ramp.[2]




Contract Drawing L5.2 Excerpt.

17. In the summer of 2004, when the excavation for the security wall footings at the Southwest ramp was being performed, the conflict with the roof of the abandoned tunnel was discovered. At the time, the discovery of the tunnel was immediately brought to the attention of the Park Service's representatives, Mike Giller, Shean Kennealy and Steve Sims. To deal with the issue, the consulting structural engineer issued a sketch on July 7, 2004 (copy is attached to the Certified Claim as **EXHIBIT 2**). As illustrated below, an elaborate concrete bridge had to be constructed over the tunnel, before the footings for the new security wall could be placed.

[2] There were several other power/steam tunnels depicted on the back ground drawings. The other tunnels, however, were at a depth that did not conflict with the footings for the new security walls around the Monument.







8/17/2004 Security Wall Conflict at Tunnel Roof




8/17/2004 Concrete Formwork Around Tunnel Roof




8/17/2004 Concrete Formwork Around Tunnel Roof




8/17/2004 Concrete Placement Around Tunnel Roof

**RCO 951.09 – Modification of Steam Tunnel Roof at Monument Plaza**

18. At the base of the Monument itself, the background drawings depicted the abandoned tunnel terminating Southwest of an existing underground utility vault on the West side of the Monument.




Contract Drawing L5.2 Excerpt

19. In this location the depth of the abandoned tunnel was sufficient so that it did not conflict with the new plaza slab and the new light pole foundations that were installed. However, at the underground utility vault next to the Monument a second tunnel was found; running from the vault itself into the basement of the Monument. Although the background drawings show the existing utility vault, they did not show and/or in anyway depict the existence of this second tunnel. It was not until excavation around the Monument itself began that this second tunnel was discovered. And, unfortunately, the depth of this second tunnel was not sufficient to avoid conflict with the footings for the new light fixtures to be installed at the new plaza slab.




20. In addition to the discovery of this second tunnel, there were other issues/problems discovered with the adjacent tunnel vault. First, the vault itself was structurally unstable and, second, the vault roof required a new reinforced concrete slab. Again, when these differing conditions were discovered, they were immediately brought to the attention of the Park Service's representatives, Mike Giller, Shean Kennealy and Steve Sims. As before, to deal with these issues, the consulting structural engineer issued a sketch on January 29, 2005 (copy is attached to the Certified Claim as **EXHIBIT 3**) requiring change work to resolve the differing conditions.




21. Due to the existence of these unforeseen differing conditions, the existing tunnel / vault slab had to be chipped away and a new concrete bridge had to be installed over the existing tunnel as well as the adjacent tunnel vault containing steam pipe.

**<u>RCO 951.01 – Remove Existing Brick & Mortar Between Bunker & Monument</u>**

22. In order to continue with the new paving at the Monument Plaza, brick and mortar around the existing tunnel / vault had to be removed. Again, this was an unforeseen differing condition which required change work by Grunley-Walsh's subcontractor, Cherry Hill, to resolve.



Brick and Mortar Around Existing Steam Tunnel Vault



Brick and Mortar Around Existing Steam Tunnel Vault



Brick and Mortar Removal Around Existing Steam Tunnel Vault

**<u>RCO 951.01.02 – Remove Existing Stone/Concrete Between Bunker & Monument</u>**

23. In addition to the removal of the brick and mortar, there was also a considerable amount of stone and concrete that had to be removed in order to install the new plaza slabs around the base of the monument. Again, this was an unforeseen differing condition which required change work by Grunley-Walsh's subcontractor, Cherry Hill, to resolve. Further, most of this work had to be done by hand/jackhammer.



Existing Stone/Concrete Requiring Removal




Existing Stone/Concrete Requiring Removal




**RCO 951.66 – Adjust Existing Vault at West Side Conflicting with Sidewalk:**

24. The final differing condition that is the subject of this claim involved two existing DC WASA vaults, not depicted on the background drawings, which conflicted with the installation of the new sidewalks at the Northwest side of the Project.




Drawing L6.2 (Amended 11/22/05) Excerpt



6/19/2005 Picture Looking West/Northwest – Location of Unforeseen Existing Vaults

25. At the time the existing vaults were discovered, it was just a few weeks prior to the planned July 4, 2005 re-opening celebration. As such, there was not enough time to effect a new design to adjust/lower the vault to avoid conflict with the new sidewalks. When Grunley-

Walsh brought this issue to the attention of the Park Service's representatives (Mike Giller and Steve Sims), it was decided to cover the existing vaults with asphalt so the opening celebration could take place. This change work was paid for in Modification No. 8 (Item C).

26. After the July 4th re-opening celebration, the asphalt had to be removed and the elevation of the existing vaults had to be adjusted so the new sidewalks could be poured and placed in this area. This change work, which stemmed from the unforeseen differing condition relating to the existing vaults, was not compensated for in Modification No. 8. As such, the cost of this work is now included in this claim.

27. The additional cost to perform each of these change items is $21,379.

28. Pursuant to the Contract's Dispute clause and the Contract Disputes Act, on January 19, 2007, Grunley-Walsh submitted its Certified Claim for the aforementioned change work; requesting a Contracting Officer's Final Decision on the matter.

29. All conditions precedent for the filing of this action have been satisfied, waived and/or excused.

**COUNT I**

30. The allegations contained in paragraphs 1 through 29 above are incorporated by reference as through fully set forth herein.

31. In providing the background drawings for the Project design, the Government impliedly warranted the adequacy and suitability for their intended purpose. This implied warranty has been breached by the Government.

32. In accordance with the Contract Differing Site Conditions clause, the Government is required to provide an equitable adjustment for the additional costs stemming from differing

conditions encountered on the Project. The Government has failed to comply with this Contract clause.

33. In accordance with the Contract Changes clause, the Government is required to provide an equitable adjustment for additional costs caused by any change to the performance of any part of the work. The Government has failed to comply with this Contract clause.

34. As a result of the foregoing and pursuant to the Contract, Grunley-Walsh is entitled to be paid $21,379 for work performed relating to the differing site conditions described herein. To date, the costs relating to these differing site conditions remain unpaid.

20. As such, the Government is liable to Grunley-Walsh for $21,379, plus interest thereon as allowed by the Contract Disputes Act.

**WHEREFORE**, Plaintiff, Grunley-Walsh, LLC, demands judgment against Defendant, The United States of America, for award of damages in the amount of $21,379, plus such other and further relief as this Court deems just and proper, including interest as required by the Contract Disputes Act.

Respectfully submitted,

Roger C. Jones

**HUDDLES, JONES**
**SORTEBERG & DACHILLE, P.C.**
10211 Wincopin Circle, Suite 200
Columbia, Maryland 21044
(301) 621-4120
(301) 621-4473 (fax)
jones@hjpc.com

Counsel for Plaintiff,
Grunley-Walsh, LLC

DATED: March 23, 2007